1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 11, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JERAMIE M.,[1]

                    Plaintiff,

          v.

MARTIN O'MALLEY, Commissioner of
Social Security,

                    Defendant.

No.    4: 24-cv-05036-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR FURTHER PROCEEDINGS**

     Due to depression, anxiety, post-traumatic stress disorder (PTSD), bipolar disorder, extreme manic episodes, intermittent explosive personality disorder, and alcohol use disorder, Plaintiff Jeramie M. claims that he is unable to work fulltime and applied for disability insurance benefits. He appeals the denial of benefits by the Administrative Law Judge (ALJ) on the grounds that the ALJ improperly

_____

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

DISPOSITIVE ORDER - 1

analyzed the medical opinion evidence, failed to conduct a proper step-three evaluation, improperly assessed Plaintiff's testimony of subjective complaints, and failed to conduct an adequate analysis at step five. As is explained below, the ALJ erred in evaluating the medical opinion evidence. This matter is remanded for further proceedings.

## I.    Background

In July 2018, Plaintiff filed an application for benefits under Title 2, claiming disability beginning May 1, 2016, based on the mental impairments noted above.[2] Plaintiff's claim was denied at the initial and reconsideration stage.[3] After the agency denied Plaintiff benefits, ALJ Palachuk held a telephone hearing in December 2020, at which Plaintiff appeared with his representative.[4]  Plaintiff testified and a medical expert and vocational expert testified.[5]  ALJ Palachuk issued a decision denying benefits in January 2021.[6] Plaintiff appealed the denial, and the Appeals Council denied review on August 11, 2021.[7] Plaintiff timely appealed to this Court, and on December 14, 2022, this Court issued an order

---

[2] AR 171-179, 209.

[3] AR 91, 96.

[4] AR 31-63.

[5] *Id*.

[6] AR 12-28.

[7] AR 1-6.

finding that the ALJ erred in considering the medical opinion evidence and in assessing Plaintiff's testimony and remanded the case to the Commissioner for further proceedings.[8] On April 11, 2023, the Appeals Council issued an order remanding the case for further proceedings.[9] On January 4, 2024, Plaintiff appeared for a second hearing before ALJ Palachuk.[10] Plaintiff testified and a vocational expert testified.[11]

After the hearing, the ALJ issued a decision denying benefits.[12] The ALJ found Plaintiff's alleged symptoms were not entirely consistent with the medical evidence and the other evidence.[13] As to medical opinions, the ALJ found:

- The opinions of the medical expert who testified at the hearing, Michael Lace, PhD, to be persuasive.

- The opinions of state agency consultants Howard Platter, MD, and Debra Baylor, MD, to be persuasive.

---

[8] AR 600-604, 605-623.

[9] AR 625.

[10] AR 555-576.

[11] *Id.*

[12] AR 525-554.  Per 20 C.F.R. § 404.1520(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[13] AR 537-542.

- The opinions of state agency consultant Jon Anderson, PhD, to be persuasive.

- The opinions of state agency consultant Carol Moore, PhD, to be persuasive.

- The opinions of treating source Kishore Varada, PA-C, to be not persuasive.

The ALJ also found the third-party function report completed by Plaintiff's spouse to be "unconvincing."[14] As to the sequential disability analysis, the ALJ found:

- Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2023.

- Step one: Plaintiff had not engaged in substantial gainful activity from May 1, 2016, the alleged onset date, through December 31, 2023, her date last insured.

- Step two: Plaintiff had the following medically determinable severe impairments: major depressive disorder, bipolar disorder, generalized anxiety disorder, intermittent explosive personality disorder, PTSD, and alcohol use disorder.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the

---

[14] AR 542-546.

listed impairments and specifically considered listings 12.04, 12.06, 12.08, and 12.15.

- RFC:  Plaintiff had the RFC to perform a full range of work at all levels with the following exceptions:

  she is limited to routine tasks in a predictable work environment and must not work at an assembly line or similarly fast production pace. She is able to make simple work related judgments, and may interact with coworkers, supervisors, and the public on a brief, occasional, and superficial basis (defined as non-collaborative work and no teamwork).

- Step four: Plaintiff is able to perform her past relevant work as a retirement officer and a general clerk.

- Step five: in the alternative, considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as a church janitor (DOT 389.667-010), a collator operator (DOT 208.685-010), and laundry aid (DOT 302.685-010).[15]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and now this Court.[16]

---

[15] AR 533-548.

[16] ECF No. 1.

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error,"[17] and such error impacted the nondisability determination.[18] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[19]

## III.    Analysis

Plaintiff seeks relief from the denial of disability on two grounds. She argues the ALJ erred when evaluating the medical opinions and when evaluating

---

[17] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[18] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other grounds by* 20 C.F.R. § 404.1520(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[19] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

1   Plaintiff's subjective complaints.  As is explained below, the Court concludes that

2   the ALJ erred in her evaluation of the medical opinion evidence and that the ALJ's

3   analysis contains consequential error.

4   **A.     Medical Opinion: Plaintiff establishes consequential error**

5          Plaintiff argues the ALJ erred in her evaluation of the medical opinions.[20]

6   Specifically, Plaintiff argues that the ALJ erred in find that Dr. Lace's opinions

7   were persuasive but not considering the waxing and waning nature of her bipolar

8   disorder, and by finding the opinions of PA-C Varada to be unpersuasive.

9          1.     Standard

10         The ALJ was required to consider and evaluate the persuasiveness of the

11  medical opinions and prior administrative medical findings.[21] The factors for

12  evaluating the persuasiveness of medical opinions and prior administrative

13  medical findings include, but are not limited to, supportability, consistency,

14  relationship with the claimant, and specialization.[22] Supportability and consistency

15

16  ────────────────────

17  [20] An ALJ must consider and articulate how persuasive she found each medical

18  opinion, including whether the medical opinion was consistent with and supported

19  by the record. 20 C.F.R. §§ 404,1520c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792

20  (9th Cir. 2022).

21  [21] 20 C.F.R. § 404.1520c(a), (b).

22  [22] 20 C.F.R. § 404.1520c(c)(1)–(5).

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

are the most important factors,[23] and the ALJ must explain how she considered the supportability and consistency factors when reviewing the medical opinions and support her explanation with substantial evidence.[24] When considering the ALJ's findings, the Court is constrained to the reasons and supporting explanation offered by the ALJ.[25]

      2.   <u>Relevant Medical Records and Opinions</u>

          a.   <u>*Dr. Lace*</u>

Dr. Lace reviewed the medical record and testified that Plaintiff did not meet or equal a listing or satisfy the C Criteria.[26] As to the B Criteria, Dr. Lace opined that Plaintiff was mildly limited in understanding, remembering, or applying information, moderately limited with interacting with others and adapting or managing herself, and mildly-to-moderately limited concentrating,

---

[23] *Id.* § 404.1520c(b)(2).

[24] *Id.* § 404.1520c(b)(2); *Woods v. Kijakazi*, 32 F.4th a at 785 ("The agency must articulate . . . how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings.") (cleaned up).

[25] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (recognizing court review is constrained to the reasons the ALJ gave).

[26] AR 37.

1   persisting, or maintaining pace.[27] Dr. Lace recommended that Plaintiff be assigned

2   routine tasks, have a work setting with few, if any, changes in the nature of the

3   tasks throughout the day, no fast-paced production work, and brief and superficial

4   contact with the public, coworkers, and supervisors.[28] Dr. Lace highlighted that

5   Plaintiff's PHQ-9 and GAD-7 scores indicated mild to mild-to-moderate symptoms

6   and were inconsistent with PA-C Varada's marked limitations.[29] And although

7   Dr. Lace acknowledged that Plaintiff's symptoms wax and wane, Dr. Lace opined

8   that Plaintiff's symptoms remain within normal limits even when her symptoms

9   wax.[30]

10              b.    _PA-C Varada_

11       In October 2020, PA-C Varada completed a Mental Residual Functional

12   Capacity Assessment.[31] PA-C Varada assessed marked limitations for all mental

13   activities, except moderate limitations as to Plaintiff's ability to remember

14   locations and work-like procedures, ability to understand and remember very short

15   and simple instructions, ability to carry out very short simple instructions, ability

16   to make simple work-related decisions, and ability to ask simple questions or

17   _____

18   [27] AR 37-38.

19   [28] _Id._

20   [29] AR 36-37.

21   [30] AR 38-39.

22   [31] AR 515-518.

23

request assistance.[32] As to the B Criteria, PA-C Varada opined marked limitations

for the four criteria.[33] PA-C Varada also opined that Plaintiff would decompensate

with even a minimal increase in mental demands or change in the environment,

that she would be off-task and unproductive over 30% of the workweek, and that

she would miss 4 or more days of work per month.[34]

      3.   <u>Analysis</u>

      The Court will address the ALJ's evaluation of Dr. Lace and PA-C Varada's

opinions as one issue, because the ALJ's error in evaluating Dr. Lace's opinions

was repeated in her evaluation of PA-C Varada's opinions.

      In its prior order, the Court stated:

> As discussed by Dr. Lace, and as highlighted by the ALJ, Plaintiff's
> treatment records routinely reflect intact insight/judgment, memory,
> attention, fund of knowledge, behavior, and appearance.[35] But the
> treatment records also reflect that Plaintiff routinely had
> obsessions/compulsions, rapid/pressured speech, and/or racing
> thoughts—either goal directed or tangential—and at times was
> hostile/aggressive and angry.[36] For instance, in April 2019, Plaintiff
> was hypomanic, anxious, irritable, hostile/aggressive,

---

[32] AR 515-516.

[33] AR 517.

[34] AR 517-518.

[35] The ALJ stated Plaintiff "was repeatedly found to be without any significant

symptoms and to repeatedly have mental status examinations within normal

limits." AR 22. *See, e.g.*, AR 398, 402, 418, 422, 428, 432, 444, 448, 480, 487, 512.

[36] *See, e.g.*, AR 398, 402, 418, 422, 432, 444, 448, 465, 480, 487, 512

paranoid/suspicious, angry, and had labile mood swings.[37] Improvement was noted at Plaintiff's May 2019 appointment, although she still had anxious mood swings, and by July 2019, she had less anger.[38] In April through September 2020, Plaintiff was observed with tangential racing thoughts, irritable mood swings, and anxiety.[39]

Consistent with the waxing and waning of irritability, anxiety, and anger, Plaintiff's PHQ-9, GAD-7, and BAD (bipolar affective disorder) scores fluctuated. As Dr. Lace mentioned, Plaintiff's PHQ-9 and GAD-7 scores fluctuated from mild to moderate. Yet, Plaintiff's BAD scores fluctuated as well, indicating that Plaintiff's bipolar symptoms—in addition to her anxiety and depression symptoms—also waxed and waned.[40] Based on Plaintiff's BAD scores noted on PA-C Varada's monthly treatment notes, Plaintiff often satisfied the criteria of having elation or irritability and at least one associated manic symptom for a distinct period and sometimes satisfied the criteria of having elation or irritability and at least three associated manic

---

[37] AR 401–04.

[38] AR 397–99, 511–14.

[39] AR 465–97.

[40] *See Attmore v. Colvin*, 827 F.3d 872, 878 (9th Cir. 2016) ("It is the nature of bipolar disorder that symptoms wax and wane over time."); *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.").

symptoms for at least one day.[41] Yet, the BAD scores were not discussed by Dr. Lace or by the ALJ. By not discussing the impact and severity of Plaintiff's waxing/waning bipolar symptoms, the ALJ's analysis of Dr. Lace's opinion is not supported by substantial evidence.[42][43]

a.    *The ALJ's consideration of Dr. Lace's opinions*

When assessing the persuasiveness of Dr. Lace's opinions, the ALJ articulated the following reasoning:

> Dr. Lace's testimony that the claimant's mental status examination results were within normal limits is consistent with the longitudinal record discussed above which documents generally normal mental status evaluations (see eg. Exhibit 5F/2-3, 9, 16, 23, 28-29, 35, 40, 44, 48; see also, subsequent records, Exhibit 10F/4, 10, 16, 22-23, 28, 40-

---

[41] *See* Nick Craddock, et al., *The Bipolar Affective Disorder Dimension Scale—a dimensional scale for rating lifetime psychopathology in Bipolar spectrum disorders*, BMC Psychiatry (2004), available at

 https://www.ncbi.nlm.nih.gov/pmc/articles/PMC481074/.

[42] See *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (emphasizing that treatment records must be viewed considering the overall diagnostic record); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (disallowing the ALJ from cherry picking evidence to support a conclusion that contradicts the overall diagnostic record); *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988) (requiring the ALJ to identify the evidence supporting the found conflict to permit the court to meaningfully review the ALJ's finding).

[43] AR 613-616.

41, 72-73, 79, 84, 89, 95, 100- 101). Dr. Lace's testimony is also not inconsistent with the portion of the record identifying repeated BAD score of 18, the exact same score is noted for nearly a 4 year period (Exhibit 5F/3, 10, 16, 23, 29, 35, 40, 44, 48; 10F/5, 11, 17, 23, 29, 35, 41, 47, 53, 59, 67, 73, 79, 85, 90, 96, 101, 107, 113, 119, 125), and the undersigned does not discount or reduce the persuasiveness of his opinion merely because he did not discuss the BAD scores in his testimony. The "BAD" scores are only provided in PA-C Varada's records. PA-C Varada did not provide a rating scale that would explain this score or where it came from, and no sample BAD test can be identified anywhere in the record (Exhibits 1F; 2F; 3F; 5F; 9F; 10F; 11F; 12F). Further, it is not possible to conclude what, if any, merit the claimant's BAD scores have as the National Institute of Health does not document or identify any accepted psychiatric test with an abbreviation of B.A.D. or even with a name that could be logically abbreviated to BAD, so it is unknown what instrument or self-reporting measurement PA-C Varada is referring to, or whether it is merely a diagnostic screening tool rather than a tool for evaluating symptom severity, and it does not appear to be a measure normally accepted in the psychiatric medical community, such as the MDQ, Young Mania Rating Scale (YMTS) and Bech-Rafaelsen Mania Rating Scale (MAS), which are the most widely used clinician rating scales for assessing the symptom severity of bipolar disorder (see National Health Institute www.ncbi.nlm.nih.gov/pmc/articles/PMC2847794 (http://www.ncbi.nlm.nih.gov/pmc/articles/PMC2847794)). Consequently, the undersigned would not expect Dr. Lace to have discussed the BAD scores recorded by PA-C Varada since they do not appear to have been based on any measurement generally used in the psychiatric medical community. Lastly, the undersigned notes that Dr. Lace's opinions concerning the claimant's functional capacity are consistent with the opinions of the State medical consultants, who also opined that the claimant retained the capacity to carry out tasks on a consistent basis, maintain concentration, maintain adequate attendance, and that she could interact with others on an occasional and superficial basis (Exhibit 1A/9-10).[44]

---

[44] AR 543-544.

1      While the Court finds that the ALJ did not properly research the Borderline

2  Affective Disorder Dimensional Scale (BADDS) Scores, this is somewhat

3  understandable given PA-C Varada's reference to the scores as BAD scores, rather

4  than BADDS scores, as they are generally referenced.  But notwithstanding the

5  reason that the ALJ was unable to identify the test administered, it was error that

6  the ALJ did not consider Dr. Lace's failure to discuss the scores. As was noted by

7  the Court it its prior order, a score of 18 is an indication of bipolar symptoms of

8  elation or irritability plus at least one associated manic symptom for a distinct

9  period; as well as brief, clear-cut psychotic symptoms that are not a prominent

10  feature of the illness.[45]  Additionally, Plaintiff's BADDS scores were 24 at times.[46]

11      The ALJ has committed error in her analysis of the consistency of Dr. Lace's

12  opinions with the medical records.  Furthermore, the Court concludes that because

13  Plaintiff's bipolar disorder was deemed a severe impairment, the ALJ's error in

14  this regard is consequential.

---

[45] *See* Nick Craddock, et al., *The Bipolar Affective Disorder Dimension Scale—a dimensional scale for rating lifetime psychopathology in Bipolar spectrum disorders*, BMC Psychiatry (2004), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC481074/.

[46] AR 398, 436, 538.

b. *The ALJ's consideration of PA-C Varada's  opinions*

The ALJ similarly articulated her reasoning with regard to PA-C Varada's

opinions, stating:

> Varada's opinions are also inconsistent with the claimant's record,
> including his own chart notes, which shows claimant is not as limited
> as Varada opined. *For example, as discussed above, although Varada
> consistently recorded a BAD score of 18 for the claimant (Exhibit 5F/3,
> 10, 16, 23, 29, 44, 48) this score does not appear to have been based on
> any identifiable test for bipolar disorder, and no rating scale or
> individual tests can be identified in the claimant's medical record,
> whether from Varada or from another provider* (Exhibits 2F; 3F; 5F;
> 10F; 12F). Moreover, the score is exactly the same over a 4 year period
> of time, irrespective of the notations in the chart notes at times show
> claimant doing better than others, and irrespective of the fluctuations
> in the PHQ9 and GAD7 tests during periods of situational
> exacerbation of symptoms, for binge drinking or conflicts with her
> husband. Furthermore, while the record shows the claimant's alcohol
> use disorder to be severe and an aggravating factor for the claimant
> (Exhibit 5F/4, 10), it also shows that Varada noted that the claimant
> was doing better when she stopped drinking (Exhibit 5F/4, 7), that the
> claimant reported only mild stress due to family, relationship, and
> occupational/economic concerns (Exhibit 5F/2, 9, 15), and frequently
> was reported to be happy and doing well (Exhibit 10F/15, 21). The
> claimant was also noted to have only rare sporadic episodes involving
> her drinking with sobriety of 6 or more months in between (Exhibits,
> 5F/2, 8), and reported limiting (Exhibit 10F/5, 10) or abstaining from
> alcohol (Exhibit 5F/15). On multiple occasions during an extended
> period of sobriety the claimant reported doing well (Exhibit 10F)
> before she had an episode of heavy drinking (Exhibit 10F/27-28).[47]

---

[47] AR 545-546.

1
2
3

Initially, the Court notes that the ALJ erred in stating that Plaintiff's BAD score was exactly the same for over a four-year period of time. It was usually the same score – 18 – but it also was noted to be 24 at differing points.[48]

4
5
6
7
8
9
10
11
12
13
14
15
16
17

The ALJ erred in failing to consider the supportability of the BADDS scores with regard to PA-C Varada's opinions regarding the limitations resulting from bipolar disorder. As the Court noted above, this is consequential because the ALJ found bipolar disorder to be a severe impairment. It is not possible that the ALJ properly considered PA-C Varada's opinions when she improperly discredited the objective testing on which PA-C Varada relied in forming them. Because the ALJ has failed to properly consider the objective testing which PA-C Varada based his opinions, the ALJ has erred in her analysis of the supportability of PA-C Varada's opinions. While an ALJ need not address every piece of evidence, an ALJ "may not ignore significant probative evidence that bears on the disability analysis."[49] Here, the ALJ failed to properly consider the consistency of Dr. Lace's opinions as to the BADDS scores and erred in her analysis of the supportability of PA-C Varada's opinions for the same reason. Therefore, the Court finds that remand is warranted.

18

    4.    <u>Summary</u>

19
20

Because the ALJ erred in her analysis of Dr. Lace's opinion as to the

21
22
23

---

[48] AR 398, 436, 538.

[49] *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. 2022).

consistency factor and erred in her analysis of PA-C Varada's opinions as to the supportability factor. On remand, the ALJ is directed to properly consider the medical evidence including the Bipolar Affective Disorder Dimensional Scales (BADDS) and, if necessary, develop the record further by ordering a consultative examination or calling a medical expert to testify.

**B.    Plaintiff's Subjective Complaints: The Court finds the issue moot.**

Plaintiff argues the ALJ failed to properly assess her subjective complaints. As discussed above, the ALJ failed to consider a crucial portion of the medical record when considering the consistency and supportability of the medical opinions.  Because the Court has remanded the case for consideration of the record as a whole, the ALJ will be required to consider the credibility of Plaintiff's subjective complaints.

**C.    Step Three: (Listings): Plaintiff fails to establish error.**

Plaintiff contends the ALJ failed to provide substantial evidence to support the finding that Plaintiff did not equal Listings 12.04, 12.06, 12.08, and 12.15.[50] Because the Court has already remanded this case for a proper evaluation of the medical opinion evidence, this issue will be addressed briefly.

---

[50] ECF No. 8.

If a claimant meets all of the listing criteria or if her impairments medically equal a listed impairment, she is considered disabled.[51] Medical equivalence will be found if the medical findings are at least of equal medical significance to the required criteria.[52] "[I]n determining whether a claimant equals a listing under step three . . . the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments."[53]  Pursuant to the applicable regulations, an ALJ may find that a plaintiff meets a listing without a medical opinion supporting that finding, but cannot make a determination that a plaintiff equals a listing unless that finding is supported by a medical opinion of record from an acceptable medical source that the plaintiff's impairment medically equals the listing.[54]

_____

[51] *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (requiring a claimant to show that the impairment meets (or medically equals) all of the specified medical criteria, not just some of the criteria).

[52]  20 C.F.R. § 416.926; *Marcia v. Sullivan*, 900 F.2d 172, 175 (9th Cir. 1990).

[53] *Marcia*, 900 F.2d at 176; *see also Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) (The ALJ "must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment.").

[54] Soc. Sec. Ruling 17-2p. *See also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (requiring a claimant to show that the impairment meets (or medically equals) all of the specified medical criteria, not just some of the criteria).

The ALJ in this matter articulated that there was no medical opinion in the record stating that Plaintiff equaled Listings 12.04, 12.06, 12.08, and 12.15 and moreover, when asked if Plaintiff equaled those specific listings, Dr. Lace testified that she did not equal the listings.[55] Thus, the ALJ had no authority to find that Plaintiff equaled listings 12.04, 12.06, 12.08, and 12.15.

To the extent that Plaintiff is asking the Court to find the ALJ remiss for having not taken an action that she was not empowered to take, the Court finds the argument to be without merit.

As to the argument that the ALJ should have found Plaintiff to meet the listings, the Commissioner is correct that the burden is on Plaintiff to argue the point with specificity, citing to the evidence supporting her argument.  A boilerplate, blanket assertion that the ALJ did not consider a marked impairment in the "B" or "C" criteria is not a proper argument, but rather a conclusory assertion.

While remand is not warranted for this issue, the Court is mindful that on remand the ALJ will be required to make a proper step three determination on the basis of the medical record in its entirety, including the newly considered BADDS scores.

---

[55] AR 37.

DISPOSITIVE ORDER - 19

1
2
3
4
5
6

7
8
9
10
11
12

13
14
15
16
17
18
19
20
21
22
23

**D.    Remand for Further Proceedings**

Plaintiff submits a remand for payment of benefits is warranted. The decision whether to remand a case for additional evidence, or simply to award benefits, is within the discretion of the court."[56] When the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings."[57]

The Court finds that further development is necessary for a proper disability determination. Here, it is not clear that Plaintiff should be found disabled and further consideration of the medical opinions and medical evidence is necessary with consideration of the BADDS scores assessed throughout the relevant period. Therefore, the ALJ should properly consider the opinion evidence and make findings at each of the five steps of the sequential evaluation process.

## IV.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

---

[56] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

[57] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke* 379 F.3d at 595 ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

DISPOSITIVE ORDER - 20

1.      The ALJ's nondisability decision is **REVERSED**, and this matter is **REMANDED** to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

2.      The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 8 and 9**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 11th day of September 2024.

*Edward F. Shea*
_____
EDWARD F. SHEA
Senior United States District Judge

DISPOSITIVE ORDER - 21